# K&L GATES

March 21, 2024

Steven L. Caponi, Esq.
steven.caponi@klgates.com

T 302-416-7080

**Via Electronic Filing**
The Honorable Gregory B. Williams
United States District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801

Re:  <u>*Ameritas Life Insurance Corp. v. WSFS*</u>, No. C.A. No. 23-236-GBW

Dear Judge Williams:

We write on behalf of Defendant/Counterclaimant Wilmington Savings Fund Society, FSB, solely in its capacity as Securities Intermediary ("Securities Intermediary").

***Background.***  This case concerns a single life insurance policy insuring the life of Marvin Flaks (the "Policy").  Ameritas Life Insurance Corp. ("Ameritas"), through its predecessor, issued the Policy on June 14, 2007, with a death benefit of $3 million.  Cook Street Master Trust III ("CSMT"), which is an investment fund managed by BroadRiver Asset Management L.P. ("BroadRiver"), purchased the Policy in 2020.  Mr. Flaks died in 2022, and CSMT is now entitled to the death benefit.  Securities Intermediary is the owner and beneficiary of the Policy on Ameritas's records and holds the Policy solely in its capacity as securities intermediary for CSMT.

Over the last 17 years, Ameritas has accepted over $2 million in premiums on the Policy while continuously representing to the Policy owner that the Policy was in force and had value.  But when it received a claim for the death benefit, Ameritas, for the first time, claimed the Policy was "STOLI" (or stranger-originated life insurance), refused to pay the death benefit, and now wants to pocket over $2 million in premiums.  Ameritas filed this action seeking a declaratory judgment to void the Policy. (D.I. 1).  Securities Intermediary filed a Counterclaim for breach of contract, bad faith, unjust enrichment in the alternative for return of premiums, and fraud. (D.I. 13).

In October 2023, the parties tentatively agreed to use 28 search terms to identify relevant documents.  Ameritas first proposed 13 terms, which were all specific to the Policy and individuals involved with the Policy and sufficient for the discovery Ameritas sought.  Ex. 1 at 1.  To establish Ameritas knew or should have known years ago the facts it now claims make the Policy "STOLI", Securities Intermediary proposed 12 additional terms, including "insurable interest."  Ex. 2 at 16-17.  In the meet and confer process, BroadRiver agreed to run the full set of search terms, while Securities Intermediary agreed to run a subset of the terms given its limited role and nominee relationship with respect to the Policy.  Each party reserved the right to object to particular terms on the grounds of undue burden.  *See, e.g., id.* at 8.  Ameritas then advised that it would not run the search term "fraud" because it resulted in too many non-responsive hits.  *See* Ex. 3 at 6.  BroadRiver, in turn, advised that it would not run "insurable interest" because it returned a

disproportionately large number of non-responsive hits, and BroadRiver had already agreed to produce all documents regarding insurable interest and insurable interest analyses to the extent they related to the Policy, Ocean Gate, "STOLI", or beneficial interest transfers. *Id.* at 1.

Despite having received 1,517 and 1,854 documents from BroadRiver and Securities Intermediary, respectively, Ameritas now seeks to require (i) BroadRiver to run the "insurable interest" search term and (ii) Securities Intermediary to run the full set of 28 search terms. As discussed further below, the discovery Ameritas seeks is unduly burdensome and disproportionate, especially when Ameritas has produced only 1,484 documents. The Court should deny Ameritas's request.

***"Insurable Interest" Search Term.*** Ameritas's request that BroadRiver run "insurable interest" is unduly burdensome and disproportionate to the needs of this case. It is axiomatic that "a court must [] 'limit the . . . extent of discovery otherwise allowed by these rules' if it finds that 'the burden or expense of the proposed discovery outweighs its likely benefit.'" *Medicis Pharm. Corp. v. Actavis Mid Atl. LLC*, 282 F.R.D. 395, 396–97 (D. Del. 2012) (quoting Fed. R. Civ. P. 26(b)(2)(C)). Federal courts routinely refuse to compel a party to run search terms that produce a disproportionately large number of hits or are otherwise unlikely to lead to a significant number of responsive documents. *See, e.g.*, *I-Med Pharma Inc. v. Biomatrix, Inc.*, No. CIV. 03-3677 DRD, 2011 WL 6140658, at *1-3 (D.N.J. Dec. 9, 2011); *Arconic Inc. v. Novelis Inc.*, No. CV 17-1434, 2019 WL 5802365, at *23-24 (W.D. Pa. Sept. 6, 2019). Here, BroadRiver ran 25 of the agreed upon search terms, resulting in 6,494 document hits, which were reviewed for responsiveness and privilege. BroadRiver also ran "insurable interest," resulting in 15,991 hits—more than ***twice as many hits*** as the other 25 search terms combined. To complete its review for "insurable interest", BroadRiver would need to review 14,412 more documents for responsiveness and privilege.

Moreover, the discovery Ameritas seeks with the "insurable interest" search term—a term Ameritas did not think was needed in the first place—is duplicative and unnecessary. Ameritas baselessly claims that BroadRiver "ha[s] refused to produce significant amounts of information" bearing on the case because it did not run this one search term. D.I. 75 at 2. That is absurd. Ameritas fails to explain why this search term would result in any responsive documents that BroadRiver has not already produced. Because it would not. Indeed, to assess Ameritas's request, BroadRiver sampled 1,874 documents hitting on "insurable interest," and not a single document was responsive. It is apparent that the burden imposed by having to review more than 14,412 documents for one search term outweighs the relevance of any documents that might be uncovered.

Ameritas's complaint concerns a single Policy that Ameritas has refused to honor, and BroadRiver has searched for and produced all non-privileged documents concerning the Policy and the circumstances surrounding BroadRiver's purchase of the Policy, including documents discussing insurable interest issues. BroadRiver also searched for terms that encompass the same concepts Ameritas appears to be seeking. For example, BroadRiver ran search terms such as "STOLI," "Ocean Gate," "wagering," "beneficial interest" or "BI" /3 transfer, and "investor owned [or] originated." BroadRiver also provided a privilege log of all documents it withheld as privileged. Simply put, Ameritas already has the documents it needs to determine how BroadRiver addressed issues related to the Policy, including STOLI and insurable interest.[1]

---

[1] The last sentence of Ameritas's argument in this regard shows it seeks any insurable interest analyses concerning

***Insurable Interest Analysis.***  Ameritas claims BroadRiver refused to produce non-privileged insurable interest analyses relevant to the Policy.  This is false.  BroadRiver agreed to produce, and did produce, any such analyses, and BroadRiver explained this to Ameritas several times, including in comments to its letter and on a call preceding the letter's filing.  But as BroadRiver further explained, the only such analyses BroadRiver located were prepared by attorneys for BroadRiver.  These analyses are therefore work product and protected by the attorney-client privilege, and they have been appropriately logged.  There is nothing for the Court to compel here.

***Securities Intermediary Search.***  Securities intermediaries are ministerial service providers, directed to administer policies on behalf of a beneficial owner.  Thus, Securities Intermediary has a limited role in this case—it is the record owner and record beneficiary of the Policy, but solely in a representative capacity for CSMT, which is the beneficial owner of the Policy.  Decisions related to the Policy—including the decision to purchase the Policy—are made only by BroadRiver.  All funds for the premiums paid on the Policy since CSMT acquired its interest came from BroadRiver/CSMT, which would also ultimately be entitled to the restitution of any premiums.  And the death benefit—should Ameritas ever pay it—ultimately belongs to CSMT.

As such, Securities Intermediary agreed to search for documents containing the Policy's number and "Flaks /2 Marvin" as search terms dating back to January 1, 2015, when Securities Intermediary became the owner of the Policy.  Securities Intermediary produced all such responsive, non-privileged documents, as well as its Policy file.[2]  Yet, despite its limited role and lack of any discretion with respect to the acquisition, funding, or collection of proceeds for the Policy, Ameritas requests that Securities Intermediary run all 28 search terms originally agreed to by BroadRiver and Ameritas.  Worse, Ameritas requests Securities Intermediary run these terms from January 1, 2007, before Securities Intermediary became the owner of the Policy.  Ameritas's request is unduly burdensome and disproportionate to the needs of the case.  *See Columbus Life Ins. Co. v. Wilmington Tr. Co., NA*, No. 19C-11-175, 2021 WL 6931838 (Del. Super. Ct. 2021) (denying insurer's request for similar documents from securities intermediary).[3]

Contrary to what Ameritas claims, Securities Intermediary's general knowledge about issues unrelated to the Policy has no bearing on this case.  Ameritas's demand mischaracterizes Securities Intermediary's discrete and ministerial role.  In the letter, Ameritas argues BroadRiver is the "sophisticated investor" and that the test in *Seck* applies only to the thoroughness of the "investors'" investigations.  D.I. 75 at 1-2.[4]  In contrast, Ameritas acknowledged Securities Intermediary's role from the outset of this case by naming it "solely as securities intermediary."

---

the Policy or the portfolio the Policy was a part of, and, as discussed below, BroadRiver agreed to produce and has produced any such responsive, non-privileged documents.
[2] Indeed, Securities Intermediary has produced more documents than Ameritas.
[3] Ameritas claims this decision "offers nothing to the analysis because it was decided before the Delaware Supreme Court's seminal decision in *Seck*."  D.I. 75 at 3 fn.2.  There is no basis for this statement, which Ameritas cites nothing in support of.  Nothing about the securities intermediary's limited role changed following the decision in *Seck*, and nothing in *Seck* states a securities intermediary is subject to additional discovery following the decision.
[4] Ameritas relies on *Wells Fargo Bank, N.A. v. Ameritas Life Ins. Corp.*, 4:21CV3118, 2023 WL 8528604 (D. Neb. Dec. 8, 2023) ("*Freid*").  Securities intermediary in that case (Wells Fargo) was the plaintiff.  In any event, and with all due respect, the Magistrate Judge in *Freid* did not reach the correct decision.  She referred to Wells Fargo as a "sophisticated investor", indicating she did not fully appreciate the limited role a securities intermediary serves with respect to policies held on behalf of investors like CSMT.  *Id.* at *5.  This Court should reach a different conclusion.

Respectfully submitted,

*/s/ Steven L. Caponi*

Steven L. Caponi, Esq. (No. 3484)

cc:     All counsel of record via CM/ECF