# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERITAS LIFE INSURANCE CORP., | : |
| Plaintiff, | : |
| v. | : C.A. No. 1:23-cv-00236(GBW) |
| WILMINGTON SAVINGS FUND SOCIETY, FSB, SOLELY AS SECURITIES INTERMEDIARY, | : **JURY TRIAL DEMANDED** |
| Defendant. | : |

## MOTION TO MODIFY PRETRIAL DEADLINES IN JOINT SCHEDULING ORDER

Defendant Wilmington Savings Fund Society, FSB, solely as Securities Intermediary ("Securities Intermediary")[1], by and through its undersigned counsel, moves for entry of an order modifying the remaining pretrial deadlines in the Joint Scheduling Order (D.I. 17), as modified on January 29, 2024 (D.I. 55), April 16, 2024 (D.I. 97) and June 10, 2024 (D.I. 115), by extending the deadlines approximately 11 weeks. In support of its motion, Securities Intermediary states as follows:

### Introduction

1. Securities Intermediary seeks an approximately 11-week extension of the forthcoming pretrial deadlines in the Joint Scheduling Order, as modified on January 29, 2024, April 16, 2024, and June 10, 2024, so that the parties can complete discovery. *See* D.I. 17, 55, 97, 115. Specifically, Securities Intermediary seeks to extend the pretrial deadlines as follows:

---

[1] At all times relevant to this case, Wilmington Savings Fund Society, FSB has acted, and continues to act, solely in its ministerial capacity as a securities intermediary for an entitlement holder. The Uniform Commercial Code defines a securities intermediary as "(i) a clearing corporation; or (ii) a person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity." U.C.C. § 8-102(a)(14).

| Event | Current Deadline | Proposed Deadline |
|---|---|---|
| Close of fact discovery | October 4, 2024 | December 20, 2024 |
| Affirmative expert reports | November 15, 2024 | January 31, 2025 |
| Rebuttal expert reports | December 13, 2024 | February 28, 2025 |
| Reply expert reports | January 10, 2025 | March 28, 2025 |
| Expert discovery cutoff | January 31, 2025 | April 18, 2025 |
| Dispositive motions and *Daubert* motions due | February 28, 2025 | May 16, 2025 |
| Oppositions to dispositive motions and *Daubert* motions due | March 31, 2025 | June 16, 2025 |
| Replies in further support of dispositive motions and *Daubert* motions due | April 21, 2025 | July 7, 2025 |
| Deadline motions *in limine* | June 6, 2025 | August 22, 2025 |
| Pretrial conference | November 12, 2025 | November 12, 2025 |
| Jury Trial begins | November 17, 2025 | November 17, 2025 |

2.  Good cause exists for this extension because, although Securities Intermediary has diligently pursued discovery, Ameritas Life Insurance Corp. ("Ameritas") has repeatedly obstructed Securities Intermediary's ability to take basic discovery relevant to its counterclaims and affirmative defenses. Ameritas also has failed to satisfy its obligation to collect and produce relevant documents responsive to Securities Intermediary's requests for production. Much of these critical deficiencies in Ameritas's document collection and production have only come to light in the recent weeks through depositions of certain Ameritas witnesses—depositions which themselves occurred much later in time than Securities Intermediary desired due to Ameritas's obstruction. The result of Ameritas's obstruction and failure to satisfy its discovery obligations

2

has been an unexpectedly large number of discovery disputes Securities Intermediary has had to submit to the Special Master, including multiple that are currently awaiting ruling by the Special Master and several additional disputes that will almost certainly require further motions before the Special Master. It also has caused discovery to take substantially longer to complete than it would have but for Ameritas's obstreperous tactics and lack of care and diligence in meeting its discovery obligations. Moreover, and perplexingly, despite Ameritas's refusal to agree to a meaningful extension, it just noticed five new depositions in just the last three weeks and has raised a litany of discovery issues of its own. Thus, despite Securities Intermediary's diligence, discovery cannot be completed by October 4, 2024. Securities Intermediary's requested extension—***which keeps the pretrial conference and trial dates the same***—should be noncontroversial, but Ameritas opposes it nonetheless and has stated "another two months of discovery is unwarranted." *See* Declaration of Aaron M. Rubin in Support of this Motion ("Rubin Decl.") Ex. 1 at 8.[2]

3. Securities Intermediary has been diligently pursuing its discovery, including having taken six depositions of Ameritas witnesses on dates dictated by Ameritas's counsel.[3] However,

---

[2] Ameritas has indicated its willingness to agree to only a four-week extension is due to its desire to take certain of the depositions it recently noticed, particularly the depositions of BroadRiver personnel Stuart Bryson and David Louie (which Securities Intermediary has not objected to as untimely despite Ameritas's late notice). Ameritas claimed it could not agree to any extension before knowing the dates these deponents are available. Ameritas is missing the point, and BroadRiver's counsel has now provided these witnesses' availability through November (and can provide potentially later dates if necessary). While Securities Intermediary will work with Ameritas to schedule Messrs. Bryson's and Louie's depositions within the extended discovery period, their availability has no bearing on the length of the extension because Securities Intermediary requires the requested 11-week extension to complete ***its*** discovery of Ameritas and Cozen.

[3] Ameritas has opposed any further depositions, despite Securities Intermediary only having used about 40 hours of its deposition time to date. Ameritas baselessly argues these in-person depositions were unduly burdensome and harassing because it required Ameritas's counsel to travel from Philadelphia to Cincinnati twice and to Nebraska once, and claims Securities Intermediary's questioning of the witnesses has focused on irrelevant issues and has been abusive and harassing. First, the notion that seeking in-person depositions of Ameritas witnesses in the places they are located is unduly burdensome and harassing—in a multi-million-dollar case Ameritas initiated—because it requires Ameritas's counsel to take a few trips is absurd. Second, Securities Intermediary's questioning has focused on relevant issues and Securities Intermediary has not abused, harassed, or yelled at the witnesses. Ameritas is seizing on a heated exchange between counsel at the end of one of the depositions—approximately five minutes of the 40 hours of record time so far—to try to mislead the Court into believing Securities Intermediary's counsel mistreated the witnesses and wasted their time. That is false. Securities Intermediary is submitting with this Motion the full transcripts of the six depositions it has taken to date so the Court can draw its own conclusions about whether the

several discovery disputes are either pending before the Special Master or in the meet and confer process between the parties (and of those, it is becoming apparent many will need to be resolved by the Special Master due to Ameritas's general refusal to provide relevant discovery). These discovery disputes include deficiencies in Ameritas's document production, which Securities Intermediary raised on August 26, 2024 after learning of them during the depositions of two members of Ameritas's claims department on August 21 and 22, 2024. Those depositions proceeded only after the Special Master ordered Ameritas to produce its claims investigation documents on July 16, 2024. *See* D.I. 121, 134 (unsealed). Securities Intermediary had been asking Ameritas to meet and confer about several other deficiencies Securities Intermediary identified since August 26, 2024, yet Ameritas ignored several of Securities Intermediary's emails and letters and only engaged in a telephonic meet and confer a few days ago, on Sunday, September 29, 2024—more than a month after Securities Intermediary requested a meet and confer on some

---

depositions have been appropriate and focused on relevant issues. *See* Rubin Decl. Exs. 3, 4, 13, 14, 15, 16. Suffice to say, Ameritas's counsel's apparent dislike of one of Securities Intermediary's counsel is not a valid basis to refuse to provide clearly relevant and proportional discovery. Securities Intermediary also is submitting examples of the types of inflammatory statements Ameritas's counsel has made to Securities Intermediary in just the past few weeks alone (and these do not capture the off the record personal attacks Ameritas's counsel has made orally to Securities Intermediary's counsel) simply to show the type of loaded rhetoric and personal attacks Ameritas's counsel has made throughout this litigation. *See, e.g.*, Rubin Decl. Ex. 17 at 7 (Mr. Kelleher: "The attorney-client privilege cannot be used to provide misleading or false testimony. That is what your client is doing. And you are facilitating your client in this regard, including by sending emails threatening us with sanctions if we don't play along and allow your client to continue to perjure itself and to compromise the integrity of these proceedings."); *id.* at 3 (Mr. Burack: "The only ethical violation here was your firm's decision to encourage Mr. Plevin to perjure himself, the decision to allow Mr. Plevin's perjury to stand, and your current threat to triple-down on this impropriety by covering it up."); *id.* Ex. 18 at 5 (Mr. Burack: "I am writing in response to the abusive discovery emails and letters we have received from you and your colleagues since at least August 26, 2024. These letters are rife with unfounded accusations of misconduct about document productions and depositions and have been sent in a way that is, quite clearly, designed to harass our firm and our client."). Ameritas's counsel also has engaged in improper "tit-for-tat" discovery tactics, including most recently telling Securities Intermediary that it would serve a subpoena it acknowledged is baseless on BroadRiver's outside counsel unless Securities Intermediary stops pursuing a valid, well-founded subpoena against Cozen for relevant, non-privileged information concerning Ameritas's examination of the death claim at issue in this case. *See* Rubin Decl. Ex. 19 at 3 (Mr. Burack: "Because you appear to be pressing forward with this issue, we plan to issue a substantively identical subpoena to ArentFox—the firm that conducted BroadRiver's STOLI investigation. Assuming ArentFox objects, we will advise ArentFox that we have issued the subpoena solely to make sure that what's good for the goose is good for the gander. That is, we will tell ArentFox that we do not presently intend to try to enforce the subpoena over its objection and that we will only consider doing that to the extent any similar motion you file against Cozen is successful.").

of the outstanding issues. During that meet and confer call, Ameritas confirmed the parties were at an impasse on certain disputes and, for other disputes, Ameritas requested additional time to provide written responses. This is also the case for other document deficiencies Securities Intermediary raised with Ameritas on September 3, 2024, which Ameritas has not meaningfully (or at all) responded to, preventing Securities Intermediary from raising these disputes with the Special Master despite Securities Intermediary's ("SI") diligent follow-up, as seen in the following chart:

| **Outstanding Discovery Disputes Raised with Ameritas** | **Status For Resolution** |
|---|---|
| (1) On August 1, 2024, SI issued a deposition subpoena to Dennis Peyton. Mr. Peyton was the only person in Ameritas's claims department responsible for deciding whether to pay death claims over $1 million, like SI's $3 million death claim under the Policy. Rubin Decl. Ex. 3 at 18:18-19:2.<br><br>As noted through Ameritas's identification of Mr. Peyton on initial disclosures and interrogatory responses, Mr. Peyton oversaw and directed the Ameritas claims department as Vice President during the relevant period from the insured's death in November 2022 to Ameritas's decision not to pay SI's claim and filing of this suit in March 2023. *See id.* Ex. 7 at 7; *id.* Ex. 8 at 4-5.<br><br>On August 26, 2024, Dennis Peyton (represented by Ameritas's counsel) filed a motion to quash the deposition subpoena in the Southern District of Ohio. | As of September 30, 2024, this is fully briefed but a hearing has not been set. |
| (2) On August 26, 2024, SI noticed a deposition of Rebecca Vonderhaar.<br><br>Ms. Vonderhaar was identified by the Ameritas claims examiner, Scott Foreman, who SI deposed on August 21, 2024 regarding | On September 29, 2024, after refusing to meet and confer with SI for over a month, Ameritas stated on a meet and confer call it opposed Ms. Vonderhaar's deposition and refused to perform any searches for Ms. Vonderhaar's |

5

| | |
|---|---|
| the examination of SI's death claim under the Policy. Mr. Foreman testified that when he was assigned to examine SI's death claim under the Policy, he "was still in training, so [he] actually needed approval for – for everything that [he] did," *id.* Ex. 3 at 19:18-22, and "Rebecca Vonderhaar was [his] trainer . . . she would basically supervise the whole process of a claim with" Mr. Foreman. *Id.* at 20:14-19. Ameritas's 30(b)(6) witness on this Policy's claim, who SI deposed on August 22, 2024, also failed to speak with either Mr. Foreman or Ms. Vonderhaar to prepare for her deposition. *Id.* Ex. 4 at 312:13-313:16.<br><br>On September 3, 2024, SI asked Ameritas to run the previously agreed-upon search terms for Ms. Vonderhaar because Ameritas had not performed any such searches for Ms. Vonderhaar's documents. | documents. Accordingly, SI is filing a motion to compel in the next week. |
| (3) On August 26, 2024, SI requested Ameritas confirm it will produce written procedures, guidelines, and standards related to the examination of life insurance death claims that Ameritas's witnesses on August 21 and 22, 2024 testified were located in specific and easily retrievable folders on Ameritas's systems. *Id.* Ex. 3 at 56:6-57:18; *id.* Ex. 4 at 52:9-53:17. | On September 29, 2024, after refusing to meet and confer with SI for over a month, Ameritas stated on a meet and confer call it refused to produce any claims examination procedure, guideline, or standards documents that its witnesses testified about (including testifying to the specific locations of such documents). Accordingly, SI is filing a motion to compel in the next week. |
| (4) On August 26, 2024, SI requested Ameritas confirm it will produce the documents and information related to the Policy that are located in specific systems Ameritas's witnesses on August 21 and 22, 2024 testified were used in examining the Policy's death claim, including for taking notes and inputting comments on the Policy's claim, all of which Ameritas is refusing to produce. *Id.* Ex. 4 at 150:18-152:18; 278:2-279:4. | On September 29, 2024, after refusing to meet and confer with SI for over a month, Ameritas stated it refused to search for any of the requested documents and information, claiming it was unduly burdensome or disproportionate to do so. However, SI requested Ameritas's position in writing on why Ameritas contends this request is unduly burdensome and disproportionate. Ameritas has not provided a written response yet. SI is awaiting Ameritas's written response, but to the extent Ameritas refuses to conduct any searches for these relevant documents, SI intends to file a motion to compel. |

6

| | |
|---|---|
| (5) On August 26, 2024, SI requested Ameritas confirm it will produce a 2021 memorandum regarding reviewing death claims for potential STOLI, authored by former Ameritas claims manager Jill O'Connor, which SI learned about after deposing Ameritas's 30(b)(6) witness from the claims department. *See id.* Ex. 4 at 142:4-144:12; 257:5-13. Ameritas previously logged this 2021 memorandum on its privilege log as entry no. 52 and SI requested its production with its related communications. | On September 29, 2024, after refusing to meet and confer with SI for over a month, Ameritas stated it will produce this document and certain related privilege log entries, however, Ameritas has not yet produced any documents, and it is unclear whether it is refusing to produce the related communications to the memorandum. SI acknowledges key members of Ameritas's outside counsel team at Cozen normally responsible for Ameritas's document productions are currently observing religious holidays, thus SI intends to follow up with Ameritas next week on the status of Ameritas's outstanding document production and may need to move to compel. |
| (6) On August 26, 2024, SI followed up with Ameritas on deposition questions about the issue states of policy claims that Ameritas's 30(b)(6) claims witness testified were referred to Cozen for investigation. At the August 22, 2024 deposition, Ameritas's 30(b)(6) claims witness was unprepared and unable to answer what states these investigated policies were issued in. *Id.* Ex. 4 at 176:24-177:21. On September 9, 2024, Ameritas provided a special interrogatory response that did not answer SI's deposition questions to Ameritas's 30(b)(6) witness. On September 18, 2024, SI requested to meet and confer about Ameritas's deficient response. | On September 29, 2024, the parties met and conferred about Ameritas not providing the requested information (the issue state) in Ameritas's special interrogatory response dated September 9, 2024. On October 1, 2024, SI deposed the Ameritas witness who verified the special interrogatory response. SI intends to continue to meet and confer with Ameritas next week about Ameritas's deficient interrogatory response, including based on the deposition testimony from October 1, 2024. |
| (7) On September 3, 2024, SI requested Ameritas confirm it will search for and produce the claims examiner Mr. Foreman's communications related to the approvals for the Policy's claim he testified to having received from Ms. Vonderhaar. *Id.* Ex. 3 at 20:14-19. | On September 29, 2024, Ameritas stated it is continuing to evaluate this request and SI intends to continue to meet and confer with Ameritas next week about Ameritas's failure to collect these relevant documents. |
| (8) On September 5, 2024, SI followed up with Cozen about SI's subpoena to Cozen dated March 13, 2024 (D.I. 73), which sought documents relating to Cozen's investigation of the Policy's claim. Ameritas's interrogatory responses from February 9, 2024 stated that it delegated this Policy's claims investigation to | The parties have exchanged various correspondence on this issue. On September 24, 2024, SI wrote its most recent email to Cozen on this dispute but Cozen has yet to respond. *See* A. Rubin Decl. Ex. 19 at 1-2. |

7

| |  |
|---|---|
| Cozen. *See id.* Ex. 8 at 6. Accordingly, SI sought these claims investigation documents from Cozen based on the Special Master's July 16, 2024 granting of a motion to compel production of Ameritas's documents, finding that "investigations of death benefit claims is generally a business function, not legal." D.I. 134 at 2. In light of the ruling, which Ameritas and Cozen did not appeal, SI followed up with Cozen after reviewing Ameritas's production and deposing Ameritas's claims witnesses on August 21 and 22, 2024. Cozen has nevertheless refused to produce any documents. | |

4. Some of the issues Securities Intermediary has raised over the past few weeks concerning Ameritas's document production are inexcusable, yet only came to light when Securities Intermediary was finally able to start taking depositions. Only through these recent depositions, for example, was Securities Intermediary able to learn that Ameritas did not even bother to collect documents specific to the Flaks Policy and death claim at issue in this action from its administrative systems that it uses to store policy documents. Securities Intermediary also learned that Ameritas did not bother to collect the claim examiner's notes on examining Securities Intermediary's death claim, some of which Ameritas only produced over a month after the claim examiner's deposition. These are not ticky-tacky grievances. These are glaring and inexcusable failures by Ameritas to satisfy its basic discovery obligations. As a result, Securities Intermediary still has not received core documents relevant to its counterclaims and defenses, let alone had the chance to review them and use them in depositions.

5. Ameritas also is trying to prevent Securities Intermediary from taking two depositions based on information Securities Intermediary learned at the August 21 and 22, 2024 depositions of Ameritas's claims personnel. These depositions demonstrated the relevance of witnesses Ameritas had identified (or previously identified) in its initial disclosures and

8

interrogatory responses—specifically, Dennis Peyton and Rebecca Vonderhaar—but whom Ameritas has refused to allow Securities Intermediary to depose despite the fact Securities Intermediary has not come close to the 105 hours the Court afforded each side for depositions. *See* D.I. 17 at 2. Although Securities Intermediary suspected Mr. Peyton and Ms. Vonderhaar were the proper witnesses to testify about claims, Securities Intermediary agreed to depose Ameritas's proffered witnesses first. However, Ameritas's proffered witnesses in the claims department consisted of (a) a low-level trainee who testified that his superiors, Mr. Peyton and Ms. Vonderhaar, had far more direct knowledge; and (b) a Rule 30(b)(6) representative who was so woefully unprepared that she had to read off notes prepared by lawyers. Now, Ameritas is trying to end fact discovery before Securities Intermediary can depose Mr. Peyton and Ms. Vonderhaar.

6. These discovery disputes remain outstanding through no fault of Securities Intermediary. To date, in this case in which $3,000,000 in death benefit and more than $2 million in premiums, plus interest, punitive damages, and attorneys' fees, are at issue involving a time period from the mid-2000s to the present, Ameritas has produced ***only 1,570 documents*** while failing to produce some of the most basic and relevant documents (such as the documents from its administrative system and claim examiner's files), forcing Securities Intermediary to file several motions to compel. This has included a motion to compel Ameritas to produce its claims investigation documents, which the Special Master granted, and a motion to compel Ameritas to collect and produce the files of two deposition witnesses, which Ameritas ultimately agreed to do only after opposing the motion and going through a two-and-a-half hour hearing with the Special Master. *See* D.I. 121, 134 (unsealed).

7. In addition to all the outstanding discovery Securities Intermediary needs to complete, Ameritas itself has noticed five new depositions in the last few weeks. Ameritas

9

provided no advance notice that it would be noticing some of these depositions and did not seek to negotiate the deponents' availability with Securities Intermediary. This sudden barrage of deposition notices (which are very clearly a tit-for-tat response to Securities Intermediary's legitimate discovery requests) also is at odds with Ameritas's representation to Securities Intermediary months ago that its discovery was complete. Despite that Ameritas had not pursued these depositions for the past year while fact discovery has been ongoing, Ameritas noticed the five depositions for the last eight business days of discovery (excluding the start of Rosh Hashanah) when five depositions were already scheduled. There is not enough time under the current schedule for these Ameritas depositions to take place. Ironically, when Securities Intermediary previously wanted to schedule nine depositions in one month, Ameritas refused and called the request "punitive." *See* Rubin Decl. Ex. 11 at 2. Yet, Ameritas has preposterously tried to force Securities Intermediary to schedule ten depositions in eight business days and refuses to agree to an 11-week discovery extension. *See id.* Ex. 1.

8. Given that both parties have outstanding discovery that cannot take place prior to October 4, this request for an extension (which leaves the trial date unchanged) should be noncontroversial. However, despite serving five deposition notices in the last three weeks of discovery for depositions that could not feasibly be scheduled before October 4, 2024, Ameritas opposes Securities Intermediary's proposed extension of the remaining pretrial deadlines requested in this motion and Ameritas has stated "another two months of discovery is unwarranted." *See id.* Ex. 1 at 8.

9. Ameritas's reason for opposing Securities Intermediary's request for a modification of the Joint Scheduling Order is apparent. After the August 21 and 22, 2024 depositions of two Ameritas claims witnesses, the details of Ameritas's withholding of relevant and non-privileged

10

documents were revealed and Ameritas now wants to limit Securities Intermediary's ability to obtain the discovery at issue in the disputes, including obtaining documents that are relevant to further depositions Securities Intermediary must take, but which cannot be fully resolved if there is no extension more than two weeks. After hiding the ball from Securities Intermediary for so long, and now being caught red handed, Ameritas is trying to run out the clock to prevent Securities Intermediary from obtaining the discovery it is clearly entitled to.

10. Accordingly, good cause exists for this Court to modify the remaining pretrial deadlines in the Joint Scheduling Order to allow time for (i) the Special Master to address the remaining disputes, as well as additional disputes both parties are preparing to present to the Special Master; (ii) Securities Intermediary to receive the large volume of relevant documents Ameritas still has not produced; and (iii) further depositions thereafter.

**Legal Standard**

11. Fed. R. Civ. P. 16 gives the district courts wide latitude to manage discovery and other pretrial matters, including setting deadlines. Under Fed. R. Civ. P. 16(b)(4), a schedule may be modified for "good cause" and with the judge's consent. "Good cause exists when the schedule cannot reasonably be met despite the diligence of the party seeking the extension." *TOT Power Control, S.L. v. Apple Inc.*, No. 21-1302-MN, 2024 WL 1759152, at *1 (D. Del. Apr. 23, 2024) (quoting *ICU Med., Inc. v. RyMed Techs., Inc.*, 674 F. Supp. 2d 574, 577 (D. Del. 2009) (finding good cause and extending fact discovery deadline).[4]

---

[4] "In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party." *ICU Med.*, 674 F. Supp. 2d at 577-78 (quoting *Roquette Freres v. SPI Pharma, Inc.*, C.A. No. 06-540-GMS, 2009 WL 1444835, at *4 (D. Del. May 21, 2009). In any event, there is no prejudice to Ameritas resulting from Securities Intermediary's requested modification of the Joint Scheduling Order. Securities Intermediary's requested 11-week extension does not impact the trial date, and Ameritas is also attempting to raise new discovery disputes with the Special Master and is only recently noticing new depositions, having agreed in previous stipulations that pending discovery disputes and remaining depositions constitute good cause for modifying the Joint Scheduling Order. *See* D.I. 88. Rather, the only prejudice Ameritas has identified is that it will delay summary judgment where Ameritas intends to seek a case-dispositive ruling. *See* Rubin Decl. Ex. 1 at 9. However,

**Procedural and Discovery History**

12. Ameritas filed the Complaint in this action on March 3, 2023. D.I. 1. In the Complaint, Ameritas seeks a declaration that a life insurance policy (the "Policy") issued in 2007 and insuring the life of Marvin Flaks (the "Insured") is void *ab initio* for lack of insurable interest and that Ameritas need not pay the death benefit to Securities Intermediary. *See id.* Ameritas alleges the Policy was part of program run by an entity called Ocean Gate. *See id.* ¶ 44.

13. Securities Intermediary filed its Answer, Affirmative Defenses, and Counterclaims against Ameritas on April 13, 2023. D.I. 13. Securities Intermediary pleads claims for breach of contract, breach of the covenant of good faith and fair dealing, bad faith, unjust enrichment (in the alternative), and fraud. *See id.* Securities Intermediary alleges Ameritas knew all the facts relevant to the Policy for years, yet continued to represent to the Policy owners that the Policy was in force while collecting millions of dollars in premiums. *See id.* Then, after the Insured died and Securities Intermediary submitted a claim for the death benefit, Ameritas claimed the Policy was void for lack of insurable interest and now seeks to withhold the $3 million death benefit while keeping over $2 million in premiums it pocketed over the past 15 years. *See id.*

14. The parties submitted the Joint Rule 26(f) report and proposed discovery plan on June 15, 2023 (D.I. 16), and the Court issued the initial Joint Scheduling Order on July 13, 2023 (D.I. 17). Under the Joint Scheduling Order, *inter alia*, each side is entitled to 105 hours of taking testimony by deposition upon oral examination. *See* D.I. 17 ¶ 3(e).

15. Following service of Rule 26(a) Initial Disclosures on July 28, 2023 (D.I. 20, 21),[5] Securities Intermediary moved diligently to take discovery from Ameritas, serving its First Set of

---

under Securities Intermediary's proposal summary judgment would still proceed—just 11 weeks later—and it would be fully briefed by July 7, 2025, which is over four months before the start of trial.

[5] Consistent with Ameritas's attempts to impede Securities Intermediary's discovery throughout this case, Ameritas's first Rule 26(a) Initial Disclosures did not disclose any Ameritas witnesses, improperly identifying only "Corporate

Requests for Production on August 9, 2023 (D.I. 22). Ameritas served its Responses and Objections to Securities Intermediary's First Set of Requests for Production on September 8, 2023. D.I. 25. As to most of the requests, including requests for documents related to any inquiry or investigation conducted by Ameritas related to the Policy or the death benefit claim, Ameritas agreed to produce all responsive, non-privileged documents. Rubin Decl. Ex. 6 at 6-7.

16. Ameritas, however, did not adhere to its discovery obligations (or its own responses) in good faith, as Securities Intermediary would later learn. On September 21, 2023, Ameritas identified fourteen custodians whose documents it would search, which it claimed were the proper custodians for responsive documents. But this resulted in Ameritas initially producing only 1,484 total documents for the time period since Ameritas issued the Policy in 2007. This is a fraction of the 3,895 documents Securities Intermediary produced to date despite BroadRiver only taking ownership of the Policy in 2020.

17. When Securities Intermediary received Ameritas's responses to Securities Intermediary's interrogatories on February 9, 2024, it became clear why Ameritas had produced almost no documents. The interrogatories identified several individuals with responsive documents whom Ameritas had not identified as custodians. *See* D.I. 85 at 2. For example, in identifying "all Persons with knowledge relating to Ameritas's decision not to pay the death benefit under the Policy"—the crux of this case—Ameritas identified eight individuals, as well as

---

Representative of Ameritas." *See* Rubin Decl. Ex. 5 at 6. After Securities Intermediary objected, Ameritas provided amended Rule 26(a) Initial Disclosures on September 21, 2023, identifying only three witnesses: Kelly Halverson, Dennis Peyton, and Scott Farmen. *See id.* Ex. 7 at 7. Nevertheless, and as discussed in more detail below, Ameritas has objected to making Mr. Peyton available for deposition, only removing Mr. Peyton from its second amended Initial Disclosures on August 26, 2024. *See id.* Ex. 12. Ameritas's counsel, after stating it would move for a protective order in front of the Special Master, forced Securities Intermediary to file a motion to compel the deposition with the Special Master, then claimed Mr. Peyton had not consented to jurisdiction, resulting in Ameritas's counsel only filing its motion to quash Mr. Peyton's deposition in the Southern District of Ohio on August 26, 2024. Securities Intermediary filed its opposition with the Southern District of Ohio on September 16, 2024, Ameritas filed a reply on September 30, 2024, and the motion is pending.

13

"[i]ndividuals at Cozen O'Connor." *See* Rubin Decl. Ex. 8 at 4-5. Ameritas had initially, and inexcusably, identified only *one* of these individuals on its custodian list.[6] *See* D.I. 85 at 3.

18. Securities Intermediary therefore asked Ameritas to run the parties' agreed-upon search terms for these newly-identified individuals. This was a seemingly uncontroversial request. Yet, Ameritas has demonstrated a penchant for making controversy out of even the most mundane requests, and true to form, following various meet and confer discussions, Ameritas refused to search *any* of these custodians' files, forcing Securities Intermediary to file a joint letter with the Court to request a discovery teleconference. The parties filed this joint letter on March 28, 2024, and the issue was fully briefed as of April 8, 2024. The Special Master held a hearing on this dispute on June 6, 2024, and only then did Ameritas agree to run the full set of search terms on two custodians in the claims department, who Securities Intermediary deposed on August 21 and 22, 2024. After these depositions, Securities Intermediary identified further glaring deficiencies in Ameritas's document collection and production and raised them with Ameritas on August 26, 2024. Moreover, on August 26, 2024, Securities Intermediary noticed a deposition of Ameritas Lead Claims Team Resource Manager Rebecca Vonderhaar, a deposition SI determined was necessary after taking the August 21 and 22, 2024 depositions of Ameritas claims employees because the depositions revealed Ms. Vonderhaar has relevant and non-duplicative personal knowledge related to the Policy's claim, a topic central to this suit that Ameritas initiated by refusing to pay the $3 million claim.

19. After Ameritas served its interrogatory responses on February 9, 2024 and amended its privilege log on March 11, 2024, Securities Intermediary confirmed that Ameritas had referred

---

[6] This one overlapping individual is Dennis Peyton, who was also listed on Ameritas's Rule 26(a) Amended Initial Disclosures. However, as noted in footnote 5, Ameritas's counsel moved for a protective order in the Southern District of Ohio to prevent Securities Intermediary from deposing Mr. Peyton on August 26, 2024, Securities Intermediary filed its opposition on September 16, 2024, Ameritas filed a reply on September 30, 2024, and the motion is pending.

14

the investigation of the death benefit claim on the policy at issue in this case to its attorneys and had withheld the investigation and claims decision documents as privileged. As the investigation of claims is a business function of insurance companies and factual in nature, Securities Intermediary demanded Ameritas produce these documents as well. Ameritas refused. This dispute was therefore included in the parties' March 28, 2024 joint letter and April 8, 2024 briefing. The Special Master granted Securities Intermediary's motion on July 16, 2024, finding that "investigations of death benefit claims is generally a business function, not legal." D.I. 134 at 2. On September 6, 2024, Ameritas raised for the first time that it believed BroadRiver should also produce investigative documents despite BroadRiver not having a business function of reviewing life insurance claims (as Ameritas does). BroadRiver's counsel provided its timely response to Ameritas's demand on September 11, 2024, and on September 19, 2024, Ameritas responded that it intends to raise this as a motion to compel with the Special Master.

20.    Securities Intermediary also has pending disputes with Cozen itself. Specifically, long before Cozen filed this lawsuit, Cozen issued opinion letters on behalf of Ocean Gate to prospective buyers of life insurance policies that Ocean Gate had acquired, including the Policy at issue in this case. Those letters opined that such policies, including the Policy, satisfied insurable interest requirements and specifically stated "that this opinion letter may be furnished to, and relied upon by, your successors and permitted assigns in connection with the transactions described herein." *See, e.g.*, Rubin Decl. Exs. 9, 10. The current owner of the Policy is such a successor/assignee. Today, however, Cozen has taken the exact opposite position and claims that the Policy, which was the subject of Cozen's opinion letters, is void for lack of insurable interest. Securities Intermediary served a subpoena on Cozen on December 6, 2023 (D.I. 44) seeking relevant documents related to these opinion letters. Cozen refused to produce any documents.

15

Securities Intermediary and Cozen submitted a joint letter to the Court regarding this dispute on January 26, 2024, and in accordance with D.I. 108 the Special Master held a hearing on this dispute (D.I. 140) in addition to a motion to compel Ameritas's production of documents (D.I. 141) on September 12, 2024.

21. On September 17, 2024, Securities Intermediary proposed extending the pretrial schedule as described in this motion for the reasons identified herein. *See* Rubin Decl. Ex. 2 at 9-10. On September 19, 2024, Ameritas responded by noticing a 30(b)(6) deposition of Securities Intermediary (which Ameritas had not given any advance notice of intending to do)—in addition to the four other new depositions Ameritas noticed on September 13—while at the same time stating it opposes extending the pretrial deadlines. *Id.* at 7-8. The parties met and conferred telephonically on September 29, 2024 (despite Securities Intermediary's numerous requests for an earlier meet and confer call). Ameritas acknowledged an extension is warranted but Ameritas's proposed four-week extension is far from enough time considering the outstanding discovery disputes. *See id.* Ex. 1 at 2-5.

22. Additionally, since September 19, 2024 and as of the parties' September 29, 2024 meet and confer teleconference, Ameritas has indicated it intends to pursue even more discovery from Securities Intermediary and BroadRiver, some of which it claims will require briefing before the Special Master. These include a motion to compel a deposition of BroadRiver's co-CEO and further requests for document productions from BroadRiver, in addition to seeking several depositions BroadRiver is agreeing to provide but which cannot occur during the current discovery period due to five other depositions already scheduled for the same period of time, in addition to one witness at BroadRiver who is unavailable for deposition until January 2025.

16

23. The foregoing constitutes good cause for a modification of the pretrial deadlines. The parties are not in a position to complete fact discovery by October 4, 2024 in light of the various pending discovery disputes, some of which the parties are continuing to meet and confer about and in light of the five deposition notices Ameritas issued between September 13 and 19, 2024. Securities Intermediary has diligently pursued discovery, but it is apparent the parties need additional time to complete fact discovery in an efficient and orderly fashion.

24. The parties have previously stipulated to two extensions of deadlines. On January 25, 2024, the parties stipulated to a three-month extension of the deadlines in the Joint Scheduling Order (which this Court so ordered on January 29, 2024), but noted that additional time was needed to resolve disputes over the parties' document productions and to ensure that there is time for all fact witness depositions to take place. *See* D.I. 50, 55 ¶ 6. The parties stipulated to a second, two-month extension of deadlines on April 11, 2024, which this Court so-ordered on April 16, 2024. *See* D.I. 88, 97. One of the purposes of the parties' stipulated extension was to "allow the Parties sufficient time for the discovery disputes to be resolved and to complete fact witness depositions." *See* D.I. 88, 97 ¶ 4. Discovery disputes about documents and fact witness depositions remain outstanding, and both Securities Intermediary and Ameritas acknowledged that they constituted good cause for an extension of the remaining pretrial deadlines in the case. *Id.*

25. Separately, on June 5, 2024, Securities Intermediary moved for an additional three-month extension of pretrial deadlines in the joint scheduling order, to which Ameritas did not agree. D.I. 110. This Court granted Securities Intermediary's requested extension. *See* D.I. 115.

26. For the forgoing reasons, there is good cause for an approximately 11-week extension of the forthcoming pretrial deadlines in the Joint Scheduling Order (D.I. 17). Securities Intermediary believes that extending the deadline for completion of fact discovery to December

20, 2024 will allow sufficient time for the Special Master to decide pending discovery disputes and hear upcoming disputes, for the discovery disputes to be resolved, for additional documents to be produced, and for the parties to complete all the depositions currently noticed. Moreover, the proposed extension would not disturb the trial date. *Cf. Vitaworks IP, LLC v. Glanbia Nutritionals (NA), Inc.*, No. 19-2259-GBW, 2023 WL 4532540, at *2 (D. Del. July 13, 2023) (Williams, J.) ("The Court observes that Vitaworks' Proposed Order to Extend Deadlines—which would have modestly extended fact discovery by less than two months, extended the deadline for dispositive and *Daubert* motions by one week, and does not disturb either trial date—sets forth the type of solution this Court expects parties to resolve without judicial intervention. But QYP opposed that solution without substantive explanation, appearing to hold Vitaworks to a fact discovery deadline that QYP appears to be at least partially responsible for straining.").

27. To align the other deadlines in the Joint Scheduling Order with any such an extension, the Securities Intermediary seeks an 11-week extension of the other pretrial deadlines as well. Securities Intermediary believes the dates for the pretrial conference and start of trial can remain unchanged to accommodate this extension. Again, Securities Intermediary seeks to extend the pretrial deadlines as follows:

| Event | Current Deadline | Proposed Deadline |
|---|---|---|
| Close of fact discovery | October 4, 2024 | December 20, 2024 |
| Affirmative expert reports | November 15, 2024 | January 31, 2025 |
| Rebuttal expert reports | December 13, 2024 | February 28, 2025 |
| Reply expert reports | January 10, 2025 | March 28, 2025 |
| Expert discovery cutoff | January 31, 2025 | April 18, 2025 |

18

| Dispositive motions and *Daubert* motions due | February 28, 2025 | May 16, 2025 |
|---|---|---|
| Oppositions to dispositive motions and *Daubert* motions due | March 31, 2025 | June 16, 2025 |
| Replies in further support of dispositive motions and *Daubert* motions due | April 21, 2025 | July 7, 2025 |
| Deadline motions *in limine* | June 6, 2025 | August 22, 2025 |
| Pretrial conference | November 12, 2025 | November 12, 2025 |
| Jury Trial begins | November 17, 2025 | November 17, 2025 |

## Conclusion

28. For these reasons, Securities Intermediary respectfully requests entry of the order filed with this motion modifying the pretrial deadlines in the Joint Scheduling Order.

Dated: October 4, 2024

**K&L GATES LLP**

*/s/ Steven L. Caponi*
Steven L. Caponi (No. 3484)
Matthew B. Goeller (No. 6283)
600 N King St., Suite 901
Wilmington, DE 19801
Telephone: 302-416-7000
steven.caponi@klgates.com

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

Khai LeQuang (*pro hac vice*)
Aaron M. Rubin (*pro hac vice*)
Richard W. Krebs (*pro hac vice*)
2050 Main Street, Suite 1100
Irvine, CA 92614-8255
Telephone: 949-567-6700
klequang@orrick.com
amrubin@orrick.com
rkrebs@orrick.com

*Attorneys for Defendant Wilmington Savings Fund Society, FSB, solely as Securities Intermediary*