IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERITAS LIFE INSURANCE CORP., | |
| Plaintiff, | |
| v. | Civil Action No. 23-236-GBW |
| WILMINGTON SAVINGS FUND SOCIETY, FSB, SOLELY AS SECURITIES INTERMEDIARY, | |
| Defendant. | |

## MEMORANDUM ORDER

Pending before the Court is Plaintiff Ameritas Life Insurance Corp.'s ("Ameritas" or "Plaintiff") Objections to the Special Master's Order Dated August 5, 2024 ("Objection") (D.I. 171), which BroadRiver Asset Management L.P. ("BroadRiver")[1] opposed (D.I. 143). For the following reasons, the Court sustains Ameritas' Objections.

### I.  BACKGROUND

In 2020, BroadRiver purchased a $3 million policy on the life of Marvin Flaks (the "Policy"). D.I. 139, Ex. 1 at 56:2-17, 172:15-17. Before purchase, BroadRiver engaged the law firm of ArentFox to conduct "due diligence" on the purchase, which included an assessment of whether the Policy "presented insurable interest risk." D.I. 139, Ex. 1 at 88:21-90:22. Such

---

[1] BroadRiver "manages an investment fund called Cook Street Master Trust III" ("CSMT"). D.I. 132 at 1 n.1. CSMT holds the insurance policy at issue "in a securities account with" Wilmington Savings Fund Society, FSB ("Wilmington Savings"). D.I. 132 at 1 n.1. Wilmington Savings is a party to this action "solely in its capacity as" a securities intermediary. D.I. 132 at 1 n.1. For ease of reading and, since it has no effect on the outcome of the Objection, the Court will reference only BroadRiver, the real party in interest, in this Memorandum Order, even when another entity, such as Wilmington Savings or CSMT, is the pertinent entity.

assessment can be important, because "a life insurance policy lacking an insurable interest is void as against public policy and thus never comes into force." *See Lavastone Capital LLC v. Estate of Berland*, 266 A.3d 964, 968 (Del. 2021) (citation omitted).

On March 3, 2023, Ameritas filed its Complaint against BroadRiver, requesting that the Court declare that the Policy is void for lack of an insurable interest. D.I. 1 ¶¶ 50-60. On April 13, 2023, BroadRiver filed a counterclaim for unjust enrichment requesting, should the Court declare that the Policy is void, a return of all premiums paid to Ameritas. D.I. 13 ¶ 91.

The seminal Delaware case on whether a party may obtain the return of such premiums is *Geronta Funding v. Brighthouse Life Insurance Co.*, 284 A.3d 47, 73 (Del. 2022). In *Geronta*, the Delaware Supreme Court instructed courts to consider *inter alia* whether the party seeking the return "is excusably ignorant" and whether "the parties are not equally at fault." *See Geronta*, 284 A.3d at 72. Whether the party seeking the return "is excusably ignorant" is informed by the following questions: "whether the party knew the policy was void at purchase or later learned the policy was void; whether the party had knowledge of facts tending to suggest that the policy is void; whether the party procured the illegal policy; whether the party failed to notice red flags; and whether the investor's expertise in the industry should have caused him to know or suspect that there was a substantial risk that the policy it purchased was void." *Id.* at 72-73.

Ameritas asked BroadRiver by interrogatory to identify the grounds under *Geronta* for BroadRiver's counterclaim of unjust enrichment. D.I. 139-2, Ex. 2 at 18. BroadRiver responded that it "had no reason to know or suspect that the Policy would be found to be unenforceable or otherwise void" for lack of an insurable interest and thus was excusably ignorant. D.I. 139-2, Ex. 2 at 18. Ameritas, in turn, sought documents from BroadRiver concerning whether BroadRiver knew there was an insurable interest. *See* D.I. 114 ¶ 3; D.I. 143 at 3. BroadRiver did not produce

any responsive documents on the purported basis of attorney-client privilege. *See* D.I. 114 ¶ 3; *see also* D.I. 76 at 3. BroadRiver's counsel also purportedly instructed BroadRiver's co-CEO, Andrew Plevin ("Mr. Plevin"), "not to answer questions" during his deposition that concerned BroadRiver's knowledge of whether there was an insurable interest. *See* D.I. 114 ¶ 3. Yet, Mr. Plevin also stated, during his deposition, that the opinion of BroadRiver's counsel, ArentFox, on whether there was an insurable interest "heavily factored" into BroadRiver's analysis of the same question and that "BroadRiver did not come to a conclusion of law separate from [its] counsel." D.I. 139-2, Ex. 1 at 142:1-16, 217:15-24.

The parties were unable to reach agreement on whether the attorney-client privilege protected communications between BroadRiver and its counsel regarding whether there was an insurable interest. Accordingly, on June 10, 2024, Ameritas filed its Motion to Compel the Production of Documents From and to Compel a Re-Deposition of BroadRiver ("Motion to Compel") (D.I. 114), seeking the production of such communications and a re-deposition of BroadRiver. On August 5, 2024, Special Master Helena C. Rychlicki ("Special Master") entered an order denying Ameritas' Motion to Compel ("Order"). D.I. 132. The Special Master held that a counterclaim for unjust enrichment under *Geronta* for the return of premiums paid to the insurer on the basis of excusable ignorance as to whether there was an insurable interest does not waive attorney-client privilege over communications regarding whether there was an insurable interest. D.I. 132 at 3. The Special Master fully relied on a previous Oral Order by this Court reaching the same conclusion in a separate dispute between Ameritas and another party. D.I. 132 at 3 (citing *Ameritas Life Insurance Corp. v. U.S. Bank, N.A.*, C.A. No. 22-623, D.I. 137 (D. Del. June 20, 2024)) ("*Ameritas Life I*").

On August 26, 2024, Ameritas filed an objection to the Special Master's Order. D.I. 139. Since the objection inappropriately relied on a document that was subject to claw back, the Court, on September 23, 2024, struck the objection and ordered Ameritas to re-file the objection without reference to the document that was subject to claw back. D.I. 166. On September 23, 2024, Ameritas timely refiled its Objection. D.I. 171. The operative response to the Objection from BroadRiver is the response originally filed on September 5, 2024. D.I. 143.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 53(f) specifies the manner in which courts review objections to orders from special masters. Rule 53(f)(3) provides that the Court's standard of review for objections to questions of fact is, unless the Court approves otherwise, *de novo*. Rule 53(f)(4) provides that the Court's standard of review for objections to questions of law is likewise *de novo*. Here, the Court's review is *de novo*.

## III.   DISCUSSION

The key question arising from Ameritas' Objection is whether a counterclaim for unjust enrichment under *Geronta* for the return of premiums paid to an insurer on the basis of excusable ignorance as to whether there was an insurable interest waives attorney client privilege over communications on whether there was an insurable interest. The answer to that question is yes.

"Generally, the attorney-client privilege protects communications between a client and an attorney acting in his professional capacity." *Syngenta v. Travelers*, C.A. No. N21C-05-143 SKR CCLD, 2024 WL 3565985, at *3 (Del. Super. Jul. 24, 2024) (cleaned up). "The privilege can be waived when a party places the privileged communication 'at issue' in the litigation." *Id.* (citation omitted). "The 'at issue' exception is based on principles of waiver and fairness intended to ensure the party holding the privilege cannot use it both offensively and defensively." *Id.* (quotations and citation omitted). "There are two instances where a party will put the otherwise privileged

4

communications 'at issue.'" *Id.* "The first is by injecting the attorney-client communication into the litigation and the second is by injecting an issue into the litigation, the truthful resolution of which requires an examination of attorney-client communications." *Id.* "The 'at issue' exception turns on whether the party seeking the privileged communications is disadvantaged because it would otherwise be unable to obtain the information from an alternate source." *Id.* "Delaware courts have historically rejected the idea that a party waives the attorney-client privilege simply by filing suit." *Id.* (citation and quotation omitted). "However, the Court must balance that rejection with the understanding that in order to build an appropriate legal defense, Insurers must have access to the underlying facts of the . . . litigation." *Id.*; *see also Tackett v. State Farm*, 653 A.2d 254 (Del. 1995) (explaining that Delaware courts "have refused to allow a party to make bare, factual allegations, the veracity of which are central to the resolution of the parties' dispute, and then assert the attorney-client privilege as a barrier to prevent a full understanding of the facts disclosed").

In *Pacific Life Insurance Company v. Wells Fargo Bank*, the defendant claimed excusable ignorance, alleging that it was "unaware of the lack of an insurable interest supporting the" insurance policy at issue. 702 F. Supp. 3d at 382. However, the defendant had "asked its counsel to conduct due diligence on this precise issue." *Id.* The court, thus, explained that, if the defendant "in fact received a conclusion [from its counsel] that the" insurance policy "lacked an insurable interest," the resulting knowledge would "directly undercut[]" the defendant's "claim that it lacked knowledge of the nature of the" insurance policy. *Id.* The court further explained that "the only means of conclusively determining such is production of the privileged communications." *Id.* The court clarified that excusable ignorance is subjective, not "objective." *Id.*

Here, like the defendant in *Pacific Life*, BroadRiver claimed excusable ignorance, alleging that it "had no reason to know or suspect that the Policy would be found to be unenforceable or otherwise void." D.I. 139-2, Ex. 2 at 18; D.I. 143; *see also Pacific Life*, 702 F. Supp. 3d at 382. Also, similarly to the defendant in *Pacific Life*, BroadRiver engaged the law firm of ArentFox, prior to purchasing the Policy, to analyze whether the Policy "presented insurable interest risk." D.I. 139, Ex. 1 at 88:21-90:22; *see also Pacific Life*, 702 F. Supp. 3d at 382. Mr. Plevin confirmed at deposition that the opinion of BroadRiver's counsel on whether there was an insurable interest "heavily factored" into BroadRiver's analysis of the same question and that "BroadRiver did not come to a conclusion of law separate from [its] counsel." D.I. 139-2, Ex. 1 at 142:1-16, 217:15-24. Therefore, as in *Pacific Life*, "the only means of conclusively determining" whether BroadRiver was excusably ignorant is the "production of the privileged communications." *See Pacific Life*, 702 F. Supp. 3d at 382.

BroadRiver's arguments to the contrary are unavailing. *First*, BroadRiver contends that whether a party is excusably ignorant "concerns what facts they knew, not what legal analysis their lawyers performed or conclusions they drew." D.I. 143 at 6. While perhaps true, BroadRiver's contention is a strawman. The legal analysis that a lawyer performs, and the resulting conclusions drawn, which sound in work product, are not precisely what is at issue here. Rather, at issue are the communications between BroadRiver and its counsel regarding whether there was an insurable interest.

*Second*, BroadRiver suggests that "Ameritas can learn about BroadRiver's knowledge" regarding whether there was an insurable interest "without violating privilege." D.I. 143 at 8. This suggestion, however, is specious. The privileged communications at issue "are the only source from which" Ameritas, and this Court, "can assess the credibility of" BroadRiver and "the

reasonableness of" BroadRiver's professed ignorance. *See Fitzgerald v. Cantor*, No. 16297-NC, 1999 WL 64480, at *3 (Del. Ch. Jan. 28, 1999).[2] Similarly, since BroadRiver's "actual understanding" of whether there was an insurable interest is "essential to its claim" for unjust enrichment, "all information available to [BroadRiver] at the time" is necessary to effectively evaluate whether BroadRiver believed there was an insurable interest. *See id.* at *2.

*Third*, BroadRiver relies on *Lyon Homes* to contest its waiver of privilege. D.I. 143 at 9. However, *Lyon Homes* is distinguishable from this action because, unlike here, the privileged communications in *Lyon Homes* were not "required" and instead were only "helpful." *See In re William Lyon Homes S'holder Litig.*, No. CIV.A. 2015-VCN, 2008 WL 3522437, at *4 (Del. Ch. Aug. 8, 2008).

*Fourth*, BroadRiver trumpets that "[f]airness is the underlying rationale for the at-issue exception" to privilege. D.I. 143 at 10 (citation omitted). What would be myopically unfair, however, would be to effectively rubberstamp the refund of millions of dollars in insurance premiums to BroadRiver on the basis of BroadRiver's self-serving and otherwise unverifiable statement that it was unaware of whether there was an insurable interest when, in fact, BroadRiver not only injected this issue into the litigation by filing a counterclaim for unjust enrichment, but also concedes that it obtained an analysis of whether there was an insurable interest from its counsel prior to its purchase of the Policy.

---

[2] BroadRiver characterizes *Fitzgerald* as finding "waiver because the defendants' communications with their lawyers were 'the only source' and 'only potential evidence' from which the plaintiff could assess defendants' alleged understanding." D.I. 143 at 8. However, as described above, *Fitzgerald* explained *inter alia* that the privileged communications would inform credibility.

*Fifth*, BroadRiver implies that the Court should rely on the Special Master's Order. D.I. 143. The Special Master's Order, however, relied on a relatively short Oral Order from a court in this district appearing to hold that claiming excusable ignorance on whether there was an insurable interest does not waive privilege over communications regarding whether there was an insurable interest. D.I. 132 at 3 (citing *Ameritas Life I*, C.A. No. 22-623, D.I. 137). The single sentence of reasoning in that Oral Order, however, fails to appreciate that there "are two instances where a party" can put privileged communications "at issue," including, like here, "by injecting an issue into the litigation, the truthful resolution of which requires an examination of" the privileged communications. *Syngenta*, 2024 WL 3565985, at *3 (cleaned up). BroadRiver's implication, therefore, relies on "turtles all the way down." *See Trump v. Boyle*, 145 S. Ct. 2653, 2656 (2025) (Kagan, J., dissenting).

## IV.  CONCLUSION

For the foregoing reasons, the Court sustains Ameritas' Objections to the Special Master's Order Dated August 5, 2024 (D.I. 171).

* * *

WHEREFORE, at Wilmington this 29th day of October 2025, **IT IS HEREBY ORDERED** that Ameritas' Objections to the Special Master's Order Dated August 5, 2024 (D.I. 171) are **SUSTAINED**, the Special Master's Order (D.I. 132) is **REVERSED**, and Ameritas' Motion to Compel (D.I. 114) is **GRANTED-IN-PART. IT IS FURTHER ORDERED** that, by no later than ten (10) days from the entry of this Memorandum Order, BroadRiver shall produce to Ameritas all communications and documents concerning whether there was an insurable interest

for the Policy, including communications with and documents from counsel, that predate the earlier of the commencement of this litigation or the genuine threat of litigation.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE