# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| AMERITAS LIFE INSURANCE CORP., <br><br> Plaintiff, <br><br> v. <br><br> WILMINGTON SAVINGS FUND SOCIETY, FSB, SOLELY AS SECURITIES INTERMEDIARY, <br><br> Defendant. | Civil Action No. 23-236-GBW |

Kaan Ekiner, COZEN O'CONNOR, Wilmington, DE; Joseph M. Kelleher, Brian D. Burack, Kara E. Cheever, COZEN O'CONNOR, Philadelphia, PA.

*Counsel for Plaintiff / Counterclaim-Defendant*

Steven L. Caponi, Matthew B. Goeller, K&L GATES LLP, Wilmington, DE; Khai LeQuang, Aaron M. Rubin, Richard W. Krebs, Joseph Jung, ORRICK, HERRINGTON & SUTCLIFFE LLP, Irvine, CA.

*Counsel for Defendant / Counterclaim-Plaintiff*

**MEMORANDUM OPINION**

November 10, 2025
Wilmington, Delaware

_____<br>
GREGORY B. WILLIAMS<br>
UNITED STATES DISTRICT JUDGE

Pending before the Court is (1) Plaintiff Ameritas Life Insurance Corporation's ("Ameritas") *Daubert* Motion to Strike Expert Report of Dr. Andre P. Liebenberg and Exclude His Testimony (D.I. 287), which has been fully briefed (D.I. 287, D.I. 310, D.I. 318); (2) Ameritas's *Daubert* Motion to Strike Expert Report of Gregory V. Serio and Exclude His Testimony (D.I. 286), which has been fully briefed (D.I. 288, D.I. 311, D.I. 320) and; (3) Ameritas's *Daubert* Motion to Strike Expert Report of George Stauffer, Esq. and Exclude His Testimony (D.I. 298), which has been fully briefed (D.I. 299, D.I. 309, D.I. 323). For the following reasons, the Court grants Ameritas's *Daubert* Motion to Strike Expert Report and Exclude Testimony of Dr. Andre Liebenberg (D.I. 287), grants-in part and denies-in-part Ameritas's Motion to Strike Expert Report and Exclude Testimony of Gregory Serio (D.I. 286), and grants-in-part and denies-in-part Ameritas's Motion to Strike Expert Report and Exclude Testimony of George Stauffer (D.I. 298).

## I.   LEGAL STANDARD

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the U.S. Supreme Court held that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's

> opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the Third Circuit has explained:

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. Qualification refers to the requirement that the witness possess specialized expertise. We have . . . [held] that a broad range of knowledge, skills, and training qualify an expert. Secondly, the testimony must be reliable; it must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his o[r] her belief. In sum, Daubert holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity. Finally, Rule 702 requires that the expert testimony . . . must be relevant for the purposes of the case and must assist the trier of fact.

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (cleaned up); *Kuhar v. Petzl Co.*, No. 19-3900, 2022 WL 1101580, at *7 (3d Cir. Apr. 13, 2022) (acknowledging the same trilogy).

Rule 702 "has a liberal policy of admissibility," *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (citation omitted); *see also United States v. Scripps*, 599 F. App'x 443, 447 (3d Cir. 2015) (same), as "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court," *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 83 (3d Cir. 2017) (quoting same).

## II.   DISCUSSION

Ameritas moves to exclude and strike certain opinions of Dr. Andre Liebenberg (D.I. 287), Gregory V. Serio (D.I. 288), and George Stauffer (D.I. 298). The Court analyzes each challenged expert in turn.

3

### A. The Court Grants Ameritas's Motion to Exclude Dr. Andre Liebenberg

Ameritas seeks to exclude Dr. Andre Liebenberg ("Dr. Liebenberg") from offering opinion testimony regarding the general historical overview and purposes of life insurance. D.I. 287 at 7. Ameritas provides several grounds in support of its motion, including, but not limited to, that Dr. Liebenberg's opinions do not fit the facts of the case and violate Fed. R. Evid. 403. *Id.* at 6, 10. Defendant Wilmington Savings Fund, FSB ("WSFS") opposes Dr. Liebenberg's exclusion, but agrees that his expert report addresses the aforementioned two issues regarding life insurance. D.I. 310 at 5-6. For the reasons discussed below, the Court excludes the opinions and testimony of Dr. Liebenberg.

Ameritas asserts that Dr. Liebenberg's opinions are general and not tied to any specific facts in this case. D.I. 287 at 11. Ameritas further contends that Dr. Liebenberg offers only "abstract, high-level assertions" that buying a life insurance policy to then sell to a third party is a "reasonable, rational, and legitimate use of life insurance." *Id.* Ameritas further contends that Dr. Liebenberg "did not review a single record document in forming his opinions," and, therefore, his opinions and testimony are not specifically tied to the facts at issue. *Id.* In response, WSFS contends that Dr. Liebenberg's opinions "could not possibly better fit this case" because he will testify about the various purposes and uses of life insurance, which addresses a key disputed question in the case: – Whether the insured had a legitimate insurance purpose in taking out the policy? D.I. 310 at 1, 9. WSFS further contends that Dr. Liebenberg is not required to apply his expert opinions to the facts of the case to be admissible, because he can assist the jury by educating about uses and purposes of life insurance. *Id.* at 11.

Dr. Liebenberg's expert report consists of two sections: (1) "the evolution of life insurance" and (2) "there are many different kinds of reasonable, rationale, and legitimate uses of life insurance today." D.I. 287-2 at 4-8. In the first section, Dr. Liebenberg provides an overview

4

tracing the development of life insurance, from its early term life form to whole life, and thereafter to universal life insurance. *Id.* at 4-7. The next section, which consists of two paragraphs, sets forth that a policyholder may elect to secure a loan against their policy's value, surrender their policy, sell their policy, or continue to hold their policy until death. *Id.* at 7-8. In that section, Dr. Liebenberg ultimately concludes that buying life insurance to take advantage of any of these options is "a rational and legitimate use of life insurance." *Id.* at 8. He further concludes that "[k]nowing ahead of time (before [the insured] procure[s] their policy) that [the insured] may be able to profit from the policy options, including the option to sell to an investor, is a reasonable, rational and legitimate reason to purchase a life insurance policy." *Id.*

The Court agrees, and Dr. Liebenberg concedes, that his opinions are broad general statements. *See* D.I. 287-5 at 81:9-16; 11:18-20. The Court also acknowledges that, in some cases, it might be important "for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case" such as "instruct[ing] the factfinder on the principles of thermodynamics, or bloodclotting, or on how financial markets respond to corporate reports." Advisory Committee's Note on Fed. R. Evid. 702. However, this general testimony must "address a subject matter on which the factfinder can be assisted by an expert." *Id.*

The Court fails to see how Dr. Liebenberg's expert report concerning general historical overview and uses of life insurance could assist the jury in determining the actual issue in dispute: Whether the policy at issue is invalid for a lack of insurable interest? *See United States v. Ford*, 481 F.3d 215, 220 n.6 (3d Cir. 2007) (agreeing with the proposition that expert testimony needs to "speak[ ] clearly and directly to an issue in dispute in the case, and . . . not mislead the jury," so that "district courts should tread carefully when evaluating proffered expert testimony, paying

5

special attention to the relevance prong of *Daubert*"). To be more specific, the dispositive question is: – Did the policy holder have an insurable interest in the life of insured *at the time the policy was procured*? *See Lincoln Nat. Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 558 (D. Del. 2010). Dr. Liebenberg's opinions on the transformation of life insurance policies and the "reasonable, rationale, and legitimate uses of life insurance today" bears no relevance or answer to that question. *See generally* D.I. 287-2. Dr. Liebenberg's opinions may be relevant to the life insurance industry generally, but his opinions fail to assist a jury in determining the existence or absence of an insurable interest in this case. *Cf. Daubert*, 509 U.S. at 591 (explaining that a study of the phases of the moon may help the trier of fact determine whether a certain night was dark, but that it "will not assist the trier of fact in determining whether an individual was unusually likely to have behaved irrationally on that night").

Moreover, Dr. Liebenberg fails to articulate any substantive basis for his opinions, resulting in his report consisting of "conclusory assertions" and "bald conclusions." *Genuine Enabling Tech. LLC v. Sony Corp.*, No. 17-135, 2022 WL 17325656, at *6 (D. Del. Nov. 28, 2022) ("Opinion testimony that is not helpful is not admissible and, in particular, testimony consisting of conclusory assertions and bald conclusions, as in an expert's testimony that 'it is so' does not assist the factfinder in understanding the evidence or determining facts in issue") (cleaned up). Lastly, the Court finds that Dr. Liebenberg's opinions and testimony would likely confuse or mislead the jury by obscuring the relevant issue and failing to aid the jury's understanding of the issues in dispute. Accordingly, the Court excludes the opinions and related testimony of Dr. Liebenberg.

**B. The Court Grants-in-Part and Denies-in-Part Ameritas's Motion to Exclude Gregory Serio**

WSFS proffers Gregory Serio ("Mr. Serio") as an expert on "life insurance regulations and customs and practices in the life insurance industry regarding the marketing and sale of life insurance, market conduct, consumer protection, insurer fraud prevention, detection, reporting, and claims handling and settlement practices." D.I. 311 at 5. Ameritas does not contest Mr. Serio's qualifications, but rather asserts that "he gained no experience in the regulation of insurance in Delaware." D.I. 288 at 1. Mr. Serio has over 20 years of experience in the life insurance industry working in capacities such as, Superintendent, First Deputy Superintendent, and General Counsel of Insurance for the State of New York. The Court finds that WSFS has established that Mr. Serio is qualified to testify as an expert on life insurance regulations, customs, and practices.

**1. The Court Strikes-in-Part Paragraphs 45-55**

First, Ameritas moves to strike paragraphs 45-55 of Mr. Serio's report, claiming that his opinions "are not expert testimony at all, but impermissible personal attacks and subjective speculation." D.I. 288 at 4. In paragraphs 45-46 of his expert report, Mr. Serio references the 1942 movie Casablanca to illustrate the idiom of "turning a blind eye" to describe Ameritas's alleged conduct and opines about re-underwriting concerns. In response, WSFS contends that, in his report, Mr. Serio details "the regulatory concerns with using the claims process to 're-underwrite' an insurance policy by investigating facts long known to the carrier" and the movie analogy is to assist the jury in understanding the inconsistency of Ameritas's conduct. D.I. 311 at 11-12. The Court finds that the analogy used by Mr. Serio imports subjective judgment rather than Mr. Serio's objective expert analysis. *In re Tylenol*, 181 F. Supp. 3d 278, 294 (E.D. Pa. 2016) ("Juries can draw inferences from the evidence without the benefit of expert testimony.") Moreover, the analogy invites the factfinder to draw conclusions on Ameritas's intent, which is

7

outside the scope of an expert. *See Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 497 (D. Del. 2019) ("Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case . . . and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury.") (cleaned up). Thus, the Court agrees with Ameritas and strikes paragraphs 45 and 46 of Mr. Serio's report. The Court also strikes paragraphs 47 -50, finding that those paragraphs contain legal conclusions and/or are not helpful to the jury. As to the remaining paragraphs 51-55, the Court finds they are helpful to the jury and are not problematic, since they provide background information that underlies Mr. Serio's permissible testimony.

        **2.      The Court Excludes-In-Part Opinions and Testimony of Mr. Serio Concerning Nevada Law**

Ameritas contends that Mr. Serio's opinions that the Policy is governed by Nevada law should be excluded because it "is an inadmissible legal conclusion on a question reserved by the Court." D.I. 288 at 4. WSFS responds that Mr. Serio "opines on how a regulator would treat the Policy." D.I. 311 at 13. "It is well-established that experts may not testify as to what the law requires or testify as to the governing law." *Withrow v. Spears*, 967 F. Supp. 2d 982, 999 (D. Del. 2013). To the extent Mr. Serio seeks to tell the jury which state's law it should apply, that testimony is precluded, as an expert may not render a legal opinion. *See id.* However, Mr. Serio is permitted to assume which state's law applies and then apply his analysis based on that assumption; "it is a common and acceptable method for experts to set forth their analysis within a legal framework that they are asked to assume is applicable, so long as the court has not ruled otherwise." *Wang v. Injective Labs Inc.*, No. 22-943, 2025 WL 1825571, at *14 (D. Del. June 26, 2025). Accordingly, the Court rules that any opinions and testimony of Mr. Serio that the Policy is subject to or governed by Nevada law or oversight are excluded.

### 3. The Court Excludes-In-Part Opinions and Testimony of Mr. Serio Concerning the Policy's Effective Date

Ameritas seeks to exclude Mr. Serio's opinion that the Policy became effective on May 3, 2007 because it is "a legal conclusion that invades the province of the Court." D.I. 288 at 4. WSFS contends that Mr. Serio is not interpreting the policy terms but instead analyzes the record using his industry experience. D.I. 311 at 15-16. Upon review of Mr. Serio's report, the Court agrees with Ameritas. By asserting a conclusion as to when the Policy took effect, Mr. Serio has gone beyond the scope of an expert and has effectively made a legal conclusion on a disputed contractual issue. *See First Liberty Ins. Corp. v. McGeehan*, 381 F. Supp. 3d 478, 485 (W.D. Pa. 2019), *aff'd*, 809 F. App'x 75 (3d Cir. 2020) ("The interpretation of an insurance policy presents a pure question of law for the court. Similarly, whether an insurance policy is ambiguous is a question of law."). Mr. Serio may provide testimony about industry practices and customs regarding policy inception, but the question of when this Policy became effective ultimately is for the Court. *See Allscripts Healthcare, LLC v. Andor Health, LLC*, No. 21-704, 2022 WL 3021560, at *26 (D. Del. July 29, 2022) ("Experts may, however, testify about an agreement where the testimony does not constitute a legal opinion or where the expert does not offer opinions as to the scope and meaning of the Agreement and its terms.") (internal citations omitted). Accordingly, the Court rules that the portions of Mr. Serio's opinions and testimony that conclude the effective date of the Policy are excluded.

### 4. The Court Excludes Opinions and Testimony of Mr. Serio Concerning Ameritas's Conduct

Ameritas takes issue with Mr. Serio's opinions regarding Ameritas's policy flagging procedures. Specifically, Ameritas contends that Mr. Serio's opinions that Ameritas should have notified WSFS upon flagging the Policy as potential STOLI should be excluded because the opinion is wrong as a matter of law. D.I. 288 at 14. Ameritas also seeks to exclude Mr. Serio's

opinion that it was misleading for Ameritas to represent that the Policy was valid, once flagged as potentially STOLI, because the opinion improperly speaks to Ameritas's state of mind and impermissibly intrudes the jury's role as fact finder. *Id.* at 13. In response, WSFS contends that Mr. Serio's opinions are from a regulatory and consumer protection standpoint and Mr. Serio is "explaining to the jury why Ameritas's conduct posed the risk of misleading the policyholder." D.I. 311 at 18. However, Mr. Serio states no industry standard or custom to support his opinion that Ameritas should have notified WSFS upon flagging the Policy as STOLI. D.I. 288-2 at 26-28. Rule 702 requires that expert testimony be based upon sufficient facts or data. Fed. R. Evid. 702(1); s*ee also FinancialApps v. Envestnet, Inc.*, No. 19-1337, 2023 WL 5289444, at *3 (D. Del. Aug. 14, 2023) (excluding an expert's opinion where the expert failed to identify the industry standard); *see also Murray v. Marina Dist. Dev. Co.*, 311 F. App'x 521, 524 (3d Cir. 2008) (affirming the exclusion of an expert's testimony as unreliable, where the expert's opinion was that a security system constituted a deviation from industry standards, but the expert "fails to identify the source of any industry standards, obligations or duties allegedly applicable . . . or provide the methodology he used to arrive at his opinions"). Thus, the Court will exclude Mr. Serio's opinion that Ameritas should have notified WSFS upon flagging the Policy as potential STOLI.

The Court now turns to Mr. Serio's opinion that Ameritas misled WSFS. "Experts are permitted to opine regarding the underlying facts that may show a person's state of mind." *I-Mab Biopharma v. Inhibrx, Inc.*, No. 22-276, 2024 WL 4581539, at *2 (D. Del. Oct. 21, 2024). However, experts are not permitted opine on a party's intent, motive, or state of mind because that is the role of the jury. *See id.* (citing *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, No. 8:14-cv-01352, 2019 WL 8138163, at *13 (C.D. Cal. Nov. 20, 2019), *aff'd*, 35 F.4th 1367 (Fed. Cir. 2022))

(explaining that while "experts may not testify they have divined a party's intent because they are not mind-readers" they may "identify certain facts . . . from the record to support an inference of a particular intent"). Although Mr. Serio may identify certain facts that he believes should have been discussed under industry standards, he cannot opine or testify that Ameritas misled WSFS. *See id*; *see also* D.I. 288-2 at 27-28. Thus, the Court will exclude Mr. Serio's opinions and testimony that Ameritas misled WSFS.

### 5. The Court Does Not Exclude Opinions and Testimony of Mr. Serio Concerning Ameritas's Investigation

Lastly, Ameritas contends that Mr. Serio's opinions regarding Ameritas's failure to investigate in accordance with industry standards is inadmissible because "he identifies no such standard beyond his own *ipse dixit*," and Mr. Serio fails to identify anything that could have alerted Ameritas. D.I. 288 at 4-5. In response, WSFS states that Mr. Serio's opinions are "based on his regulatory experience and industry custom and practice." D.I. 311 at 19. WSFS also responds that Mr. Serio's opinion is "relevant and helpful to [WSFS's] bad faith and fraud claims because it goes to what Ameritas could have done, and what is commonly done in the industry, with respect to investigating the Policy for STOLI." *Id.* The Court finds no issue with Mr. Serio's opinions regarding whether Ameritas's investigation procedures were in accordance with industry standards. "The Third Circuit has established that an expert can testify as to industry custom and practice, if relevant, so long as the expert does not opine as to what was required under the law, or whether the defendant complied with the [law]." *Micron Tech., Inc. v. Rambus Inc.*, No. 00-792, 2007 WL 9771152, at *2 (D. Del. Aug. 29, 2007) (internal quotations omitted); *see also In re Columbia Pipeline Grp., Inc. Merger Litig.*, No. 2018-0484, 2022 WL 2902769, at *1 (Del. Ch. July 14, 2022) ("An expert can testify as to whether a party's actions (irrespective of the party's state of mind) complied with or were consistent with industry standards and procedures.") Mr.

Serio identifies that "it is industry practice for life insurance carriers to conduct STOLI and fraud reviews as part of underwriting, and this is commonly understood in the industry to be the responsibility carriers have before issuing a policy." D.I. 288-2 at 30. He also outlines the framework upon which he based his conclusion. *Id.* at 28-30. Thus, the Court finds that Mr. Serio's opinion regarding whether Ameritas's investigation was consistent with industry standards is admissible.

> C. **The Court Grants-in-Part and Denies-in-Part Ameritas's Motion to Exclude George Stauffer**

Ameritas seeks to strike and exclude the testimony and opinions of expert, George Stauffer ("Mr. Stauffer"), because his report contains legal conclusions and inconsistencies with relevant Delaware law. D.I. 299 at 1-2. Mr. Stauffer's qualifications are undisputed. The Court finds that WSFS has established that Mr. Stauffer is qualified to testify as an expert about "customs and practice[s] within the life settlement industry, particularly concerning the secondary/tertiary market purchase of a life settlement portfolio and the due diligence investors perform in connection to such purchases." D.I. 309 at 5.

> 1. **The Court Does Not Exclude the Opinions and Testimony of Mr. Stauffer Concerning Investor Reliance**

First, Ameritas contends that Mr. Stauffer's opinion that "it is reasonable for an investor to refrain from actually investigating policies and to instead rely on insurer underwriting" is unreliable and does not fit the facts of the case. D.I. 299 at 11-17. Ameritas states that Mr. Stauffer's opinion is inconsistent with *Geronta Funding v. Brighthouse Life Ins. Co.* ("*Seck*"), the controlling Delaware case that sets forth the fault-based analysis required to determine which party is entitled to premiums paid on an insurance policy that is void *ab initio* for lack of an insurable interest. *Geronta Funding v. Brighthouse Life Ins. Co.*, 284 A.3d 47, 71-73 (Del. 2022). Ameritas states that, under the fault-based analysis, an investor would have to actually investigate all policies

12

for an insurable interest before buying them. D.I. 299 at 12. Therefore, Mr. Stauffer's opinion about "what is supposedly customary or reasonable [is] at odds with Delaware law" and is "not helpful, appropriate, or admissible." *Id.* WSFS responds that Ameritas mischaracterizes Mr. Stauffer's opinions. D.I. 309 at 13. Rather, Mr. Stauffer opines that it was reasonable, and the custom and practice within the industry, for investors to rely on the underwriting and diligence performed by the insurance company that issued the policy. *Id.*; D.I. 299-2 at 27. WSFS contends that Mr. Stauffer's opinion helps the jury "understand how investors are limited in the due diligence they can perform" and to assess the diligence necessary for the *Seck* analysis for WSFS's counterclaims. D.I. 309 at 13. As discussed previously, an expert can testify as to industry custom and practice, as long as the expert does not opine on what the law requires or whether a party complied with the law. *See Micron Tech., Inc.*, 2007 WL 9771152, at *2. When providing an expert opinion based on his own experience of industry custom practice, the expert must do more than make conclusory declarations that his experience led to his opinion. *See Callaway Golf Co. v. Dunlop Slazenger Grp. Americas, Inc.*, No. 01-669, 2004 WL 1534786, at *4 (D. Del. May 21, 2004) (citing *Primavera Familienstifung v. Askin*, 130 F.Supp.2d 450, 530 (S.D.N.Y. 2001) (An expert "must do more than simply aver conclusorily that his experience led to his opinion.")). Here, Mr. Stauffer bases his opinion on the "custom and practice within the industry", opining that it is customary for investors to rely on the underwriting and diligence performed by the insurance companies." D.I. 299-2 at 27. He also explains the framework underlying his conclusion. *Id.* at 27-28. The Court finds this is sufficient and, therefore, will not exclude Mr. Stauffer's opinion and testimony that it was reasonable, and the custom and practice within the industry, for investors to rely on the underwriting and diligence performed by the insurance company that issued the policy.

### 2. The Court Excludes-In-Part Opinions and Testimony of Mr. Stauffer Concerning an Investor's Understanding of STOLI

Ameritas also contends that Mr. Stauffer's opinions regarding investors' understanding of STOLI attempts to instruct the jury on "the state of Delaware law," which is reserved for the Court. D.I. 299 at 18. Ameritas asserts that Mr. Stauffer's opinions contradict Delaware law. *Id.* at 19. In response, WSFS states that Mr. Stauffer never opines on how the laws should or would be applied. D.I. 309 at 16. Instead, Mr. Stauffer's opinion is "focused on life insurance industry custom and practice and what a reasonable investor would have done or concluded in the life settlement market." *Id.* Upon review of Mr. Stauffer's report, the Court agrees with WSFS.

Mr. Stauffer's opinions are based on industry customs and practices. In the relavant paragraphs, Mr. Stauffer recites the framework on which he relies on to form his opinion that "investors reasonably concluded that policies sold on the secondary market, where there was not a preconceived arrangement by the insured to sell such policies, were not STOLI or indica of STOLI." *See* D.I. 299-2 at 17-18. This is a common and accepted method for Mr. Stauffer to present his analysis. *See Wang*, 2025 WL 1825571, at *14. However, the Court cautions that Mr. Stauffer's testimony must remain within the scope of his proffered expertise, which WSFS states is "life settlement industry customs and practices." D.I. 309 at 11. Although Mr. Stauffer is a licensed attorney, that does not qualify him to render legal conclusions regarding the interpretation of Delaware statutes and case law. *See Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 435 (D. Del. 2004) ("A party can only elicit expert testimony from someone who has specialized knowledge or training sufficient to qualify him or her to opine on an issue within their field of expertise, and the expert's opinion must be confined to that field."); *see also Shire ViroPharma Inc. v. CSL Behring LLC*, No. 17-414, 2021 U.S. Dist. LEXIS 61551, at *41 (D. Del. Mar. 31, 2021) ("Expert witnesses are prohibited from rendering a legal opinion because it would

14

usurp the District Court's pivotal role in explaining the law to the jury." (cleaned up)). Accordingly, the Court will not exclude Mr. Serio's opinions and testimony regarding investors' understanding of STOLI, but will confine his opinions and testimony to the industry practices and customs of the life settlement industry. Mr. Stauffer's opinions and testimony should not extend to legal conclusions regarding Delaware law and the Court excludes any such opinions and testimony.

### 3. The Court Does Not Exclude Opinions and Testimony of Mr. Stauffer Concerning Investor Reliance on the 2010 Opinion Letters

Ameritas contends that Mr. Stauffer's opinion that BroadRiver reasonably relied on 2010 opinion letters discussing the validity of Ocean Gate acquired policies under various state laws should be excluded. D.I. 299 at 20. Specifically, Ameritas contends that BroadRiver never saw, nor relied on, the 2010 opinion letter applying Delaware law; therefore, Mr. Stauffer's opinion is irrelevant. Ameritas further contends that Mr. Stauffer's opinion that an investor could reasonably use the legal analysis from the 2010 opinion letters applying New Jersey or Florida law to evaluate the validity of the Flaks Policy was unreasonable. *Id.* at 21. Ameritas also contends that Mr. Stauffer's opinion that a reasonable investor would take comfort in the description of the program facts is also unreasonable. *Id.* Lastly, Ameritas contends that Mr. Stauffer's opinion ignores evidence showing that BroadRiver knew or should have known that several statements in the 2010 opinion letters were false and it would be "unhelpful and misleading" to a jury to allow testimony on this opinion. *Id.*

In response, WSFS contends that Ameritas provides no legal support for its contentions. D.I. 309 at 17. WSFS also contends that Mr. Stauffer's opinion is specific. *Id.* at 17-18. Mr. Stauffer opines that, based on the evidence, BroadRiver received comfort from the description in the opinion letters, saw the facts matched the Flaks Policy, and understood that their counsel

determined the policies complied with relevant law. *Id.* at 18. WSFS further contends that Mr. Stauffer's opinion would be "helpful to a jury in determining which party was more at fault." *Id.* at 18. Lastly, WSFS contends that Mr. Stauffer opined that "it would be consistent with custom and practice for an investor to gain comfort in this [scenario]." *Id.* at 19.

After analyzing the arguments of Ameritas and WSFS, the Court finds that Ameritas's arguments primarily contest the credibility and logic underlying Mr. Stauffer's opinion and testimony, which go to the weight of the evidence, not its admissibility. Ameritas can challenge these issues through cross-examination at trial. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Therefore, the Court does not exclude Mr. Stauffer's opinions and testimony that it was consistent with industry custom and practice for an investor to rely on opinion letters from counsel.

### 4. The Court Does Not Exclude Opinions and Testimony of Mr. Stauffer Concerning Investor's Expectations

Lastly, Ameritas contends that Mr. Stauffer's opinion that investors reasonably expect insurers to disclose policies that are potentially STOLI should be precluded. D.I. 299 at 22-24. Ameritas provides several grounds in support of this contention, including, but not limited to, that the opinion is contrary to Delaware law, which states an insurer has no legal duty to raise potential STOLI flags. *Id.* at 22-23.

In response, WSFS contends that Mr. Stauffer's opinion is based on industry customs and practices in 2020. D.I. 309 at 19. In his report, Mr. Stauffer explains that, in 2020, investors reasonably assumed carriers would adhere to this duty and disclose policies that were flagged as potential STOLI. *Id.* at 20. Upon review of Mr. Stauffer's report, the Court finds that Mr. Stauffer's opinions are derived primarily from his experience with industry customs or practices.

"An expert may offer opinions based on personal experience if the expert also explain[s] how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Bd. of Regents Univ. of Texas Sys. v. Bos. Sci. Corp.*, 645 F. Supp. 3d 324, 332 (D. Del. 2022) (internal citations omitted). Here, Mr. Stauffer's opinion is that "[i]t is reasonable and consistent with custom and practice within the industry for a policyowner to expect the carrier will disclose if it identified the policy as potential STOLI while it was in force." D.I. 299-2 at 33. Mr. Stauffer's opinion is informed by his professional experience at MLF Financial, where his responsibilities included, among other duties, serving as the "primary due diligence advisor, consultant, and expert to MLF Financial's clients on both buy and sell-side transactions." *Id.* at 3. In that capacity, Mr. Stauffer reviewed several policies similar to the policy at issue and "became knowledgeable and experienced with these types of policies, including their general characteristics and the issues facing such policies." *Id.* Additionally, Mr. Stauffer advised and interacted with clients on these issues. Therefore, Mr. Stauffer is qualified to opine that, in his experience, it is reasonable for a policy holder to expect the carrier to disclose to the policy owner if it has identified their policy as potential STOLI. D.I. 299-2 at 36. Such testimony is also relevant and helpful to the jury. *See* Fed. R. Evid 702. Accordingly, the Court does not exclude Mr. Stauffer's opinion that, based on his experience, investors reasonably expect insurers to disclose policies that are potentially STOLI.

### III. CONCLUSION

For the foregoing reasons, the Court grants Ameritas's *Daubert* Motion to Strike Expert Report of Dr. Andre P. Liebenberg and Exclude His Testimony (D.I. 287), grants-in-part and denies-in-part Ameritas's *Daubert* Motion to Strike Expert Report of Gregory V. Serio and

Exclude His Testimony (D.I. 286), and grants-in-part and denies-in-part Ameritas's *Daubert* Motion to Strike Expert Report of George Stauffer, Esq. and Exclude His Testimony (D.I. 298).

An Order consistent with this Memorandum Opinion will be entered.